**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**STEVEN G. WOYNAR and ANNA SAPIA,**

    **Plaintiffs,**

**vs.**                                            **Case No. 6:10-cv-1458-28GJK**

**MICHAEL CHITWOOD, Chief of Police of the City of Daytona Beach, Florida, OFFICER THOMAS ALFANO, OFFICER JAMES CHIRCO, OFFICER MICHAEL OTERI, OFFICER RANDALL DOYLE, and OFFICER CHARLES FIELDS,**

    **Defendants.**
_____/

# ORDER

Currently before the Court is the Motion to Dismiss Amended Complaint and Motion to Strike Official Capacity Claims Against the Defendant Officers (Doc. 50) filed by Defendant Michael Chitwood, the Chief of Police of the City of Daytona Beach. Plaintiffs have filed a Response (Doc. 54) to the motion, and it is ripe for ruling.

## I. Background

This case arises from the repossession of a 53-foot boat on which Plaintiffs were residing, and the salient allegations have been recounted in a prior Order (Doc. 35). Plaintiffs, Steven Woynar ("Woynar") and Anna Sapia ("Sapia"), filed this lawsuit on September 30, 2010 against the Chief of Police of the City of Daytona Beach and six Daytona Beach police officers, asserting eight constitutional claims as well as six state law tort claims. The Court previously granted motions to dismiss filed by the Defendants, finding

that the initial Complaint did not provide fair notice of the claims against the Defendants as required by Federal Rule of Civil Procedure 8 because Plaintiffs failed to specify which of the fourteen counts were brought against which Defendants and because it was not clear in what capacity each Defendant was being sued. (Order, Doc. 35). Plaintiffs were, however, given leave to amend their Complaint to rectify the noted deficiencies.

Plaintiffs have now filed an Amended Complaint (Doc. 40) in which they allege nine claims, each of which alleges, pursuant to 42 U.S.C. § 1983, a constitutional violation.[1] In Counts I through V, Woynar alleges violations of the Fourth Amendment, and in Counts VI though IX, Sapia alleges violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments. Each of the five remaining[2] officer Defendants has filed an Answer to the Amended Complaint. (Docs. 43-47). Chief of Police Michael Chitwood ("Chief Chitwood"), however, has filed the Motion to Dismiss and Motion to Strike (Doc. 50) that is now before the Court.

## II. Legal Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129

---

[1] Unlike the initial Complaint, the Amended Complaint does not include any state law claims.

[2] In the initial Complaint (Doc. 1), six police officers—as well as the Chief of Police—were named as Defendants. However, in the Amended Complaint (Doc. 40), only five officers have been named; no claims against former Defendant Officer Robert Atkins have been brought in the Amended Complaint.

S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Discussion

In his motion, Chief Chitwood makes three types of challenges to the Amended Complaint. He contends that the Amended Complaint does not satisfy Rule 8 because it alleges multiple, duplicative claims for municipal liability; that a basis for municipal liability has not been adequately stated; and that three of the counts are inapplicable to the alleged facts or are duplicative of other counts. These arguments are addressed in reverse order.

#### A. Challenges to Counts I, VII, and VIII

Chief Chitwood argues that Counts I, VII, and VIII should be dismissed because they are inapplicable to the circumstances of the case or are duplicative of other counts. This portion of the motion to dismiss is well-taken only with regard to Count VIII.

##### 1. Count I

In Count I of the Amended Complaint, Woynar alleges that he was deprived of property without due process in violation of the Fourth Amendment. Chief Chitwood argues that Woynar has mispleaded a due process claim under the Fourth Amendment rather than under the Fifth and Fourteenth Amendments.

Chief Chitwood is correct that the Fifth and Fourteenth Amendments—not the Fourth—provide due process rights; the Fourth Amendment proscribes unreasonable searches and seizures and is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. See, e.g., Maryland v. Pringle, 540 U.S. 366, 369 (2003). Courts have recognized claims of state-assisted deprivation of property as both unreasonable seizure claims under the Fourth Amendment and as claims of violations of procedural due process rights under the Fourteenth Amendment. See Soldal v. Cook Cnty., 506 U.S. 56, 70 (1992) (reversing circuit court's dismissal of Fourth Amendment claim that was based on repossession of mobile home with assistance of deputy sheriffs, noting that "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands"); Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998) (finding that plaintiff had "a strong claim against [constable] for violating his right to procedural due process by failing to give him advance notice and an opportunity to be heard prior to . . . seizure of . . . van").

Despite its imperfect labeling, Count I describes a deprivation of property without due process, and such a claim is potentially viable on the facts described. Count I will not be dismissed.

2. Counts VII and VIII

In Count VII of the Amended Complaint, Sapia alleges a violation of due process under the Fifth and Fourteenth Amendments, and in Count VIII she alleges an Eighth Amendment claim of cruel and unusual punishment. Chief Chitwood asserts in his motion that these claims are duplicative of the Fourth Amendment claims in Counts II, III, and VI.

The two Plaintiffs have brought separate claims—Counts I through V are brought by Woynar, and Counts VI through IX are brought by Sapia. Sapia's claims could only be duplicative of her own claims—not Woynar's—and thus Chief Chitwood's argument boils down to whether Counts VII and VIII are duplicative of Count VI.

Count VII is not redundant to Count VI. In Count VI, Sapia alleges that the officers' search of the boat and the seizure of her personal belongings during that search violated the Fourth and Fourteenth Amendments. In Count VII, Sapia alleges that when she was "trespassed" from the boat and "cast out into the night" by the officers, her due process rights under the Fifth and Fourteenth Amendments were violated. Chief Chitwood has not presented a basis for dismissal of Count VII.

Chief Chitwood is correct, however, that Count VIII does not state a claim on the facts of this case. In this count, Sapia alleges a violation of her Eighth Amendment right to be free from cruel and unusual punishment. Sapia does not have a viable Eighth Amendment claim because the Eighth Amendment applies only to convicted prisoners. See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). "Where the State seeks to impose punishment without [a formal adjudication of guilt], the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Id. Sapia has already pleaded a Fourteenth Amendment due process claim in Count VII based on being "trespassed" from the boat. Count VIII is due to be dismissed.

B. Municipal Liability Allegations

Chief Chitwood also argues that the Amended Complaint fails to state a cause of action against him in his official capacity. Because an official capacity suit is the equivalent of a suit against the entity for whom the official works—here, the City of Daytona Beach—Chief Chitwood's argument is that the Amended Complaint does not contain sufficient allegations to support municipal § 1983 liability.

"[A] municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 663 (1978)). "Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability." Id. A plaintiff need not establish a formal municipal policy in order to hold a municipality liable; "§ 1983 liability may be imposed on a municipality based on 'governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Id. at 1308 (quoting Floyd v. Waiters, 133 F.3d 786, 795 (11th Cir. 1998)). "To prove § 1983 liability against a municipality based on custom, a plaintiff must [ultimately] establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations and citations omitted).

The allegations of the Amended Complaint sufficiently allege a municipal custom, policy, or practice of police assistance with self-help repossession. Affording Plaintiffs the benefit of reasonable inferences at this stage of the case, Plaintiffs have adequately alleged

that the private reposessor routinely calls the police for assistance with repossessions and that such assistance is routinely provided. Thus, the motion to dismiss is denied to the extent it seeks to dismiss the municipal liability allegations.

### C. Failure to Contain a Short and Plain Statement of the Claim/Motion to Strike

Finally, Chief Chitwood argues that the Amended Complaint does not meet the requirement of Federal Rule of Civil Procedure 8(a) that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Chief Chitwood asserts that the numerous official capacity claims against the police officers are duplicative and that the official capacity allegations against the other officers should be stricken to avoid confusion as to the real parties in interest.

In their response to Chief Chitwood's Motion to Dismiss, Plaintiffs argue that this objection is for the individual officers—rather than Chief Chitwood—to make. Plaintiffs also object to dismissal of any of the named Defendants even though Plaintiffs seemingly are not seeking to recover damages from each of them individually. (See, e.g., Doc. 54 at 5 ("Not having the officers individually named . . . when it is their conduct that is being challenged[] would potentially cause as much or more confusion to the t[r]ier of fact as naming them since not having them named could give the impression the deputies [sic] are immune from liability. This, coupled with an argument [that] there is no liability could give a jury the idea the entity cannot be liabl[]e since the entity can only act through its personnel.")). Although the Court will not strike any allegations from the Amended Complaint at this time, the Court agrees that clarification of the real parties in interest is warranted to avoid both unnecessary litigation expense and future juror confusion.

"[T]he difference between an official capacity suit and an individual capacity suit is a big difference. And, in general, plaintiffs have a duty to make plain who[m] they are suing and to do so well before trial." Colvin v. McDougall, 62 F.3d 1316, 1318 (11th Cir. 1995) (citation omitted). "The main concern of a court in determining whether a plaintiff is suing defendants in their official or individual capacity is to ensure the defendants in question receive sufficient notice with respect to the capacity in which they are being sued." Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1047 (11th Cir. 2008).

To establish individual liability against a defendant in a § 1983 case, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," but "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law" in order for the entity to be liable. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Immunity defenses also vary in the two types of actions; an individual-capacity defendant may be able to assert a qualified immunity defense, but "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." Id. at 167. Additionally, punitive damages are available in individual-capacity suits, but such damages may not be recovered from a municipality. Id. n.13. Because "local government units can be sued directly for damages and injunctive and declaratory relief," "[t]here is no longer a need to bring official-capacity actions against local government officials." Id. n.14.

Nevertheless, "plaintiffs are not required to designate with specific words in the pleadings that they are bringing a claim against defendants in their individual or official capacities, or both. 'When it is not clear in which capacity the defendants are sued, the

-8-

course of proceedings typically indicates the nature of the liability sought to be imposed.'" Young, 529 F.3d at 1047 (quoting Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994)). "Thus, while it is 'clearly preferable' that a plaintiff state explicitly in what capacity defendants are being sued, 'failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." Id. (quoting Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001)).

As noted in Graham, municipalities can be sued directly and thus it is not necessary to bring official-capacity actions against local government officials. Nevertheless, this is what Plaintiffs have done in this case. In the prior Order (Doc. 35), this Court noted that it was not clear whether Plaintiffs were suing the Defendants in their individual or official capacities; in the Amended Complaint, and as evidenced by the "course of proceedings," the capacity in which the Defendants are sued remains unclear as to some of the counts.

The only counts that are labeled as individual capacity counts are Count IV (against Defendant Alfano only); Count V (against Defendant Doyle only); and Count IX (against Defendant Fields only. Thus, it now seems clear that those counts are, respectively, against Officers Alfano, Doyle, and Fields individually and that no municipal liability is alleged in those counts. In Counts I, II, III, VI, VII, and VIII, Plaintiffs specify that the Defendants are sued in their official capacities, which is the equivalent of the claims being brought against the City of Daytona Beach. However, in all but Count VII—in which Plaintiffs demand judgment against Chitwood and Fields "in their official capacities"—Plaintiffs demand judgment against the Defendants by individual name. And, in Counts VII and VIII—which are labeled as official capacity claims—Sapia seeks punitive damages, but such damages

are not recoverable from municipalities.  Furthermore, even though Defendants Chirco and Oteri are not named "individually" in any count, they have filed Answers to the Amended Complaint and have asserted the defense of qualified immunity.  (See Docs. 44 & 45).  Chief Chitwood has apparently not been named individually either; indeed, Plaintiffs have referred to Chief Chitwood's motion as the motion of the City of Daytona Beach.  (See Doc. 55 at 2).

Although "the course of proceedings" may ultimately reveal in what capacity the Defendants are being sued, the Defendants should be on notice of the capacities in which they are sued prior to the summary judgment stage of the case so that applicable defenses can be addressed and unnecessary filings and appearances can be avoided.  Plaintiffs' assertion that it would be confusing **not** to name the officers whose conduct is challenged—even if Plaintiffs seek only to hold the City of Daytona Beach accountable—is incorrect; indeed, the contrary it true.  See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (noting that "[t]o keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury" and affirming the district court's decision to grant a directed verdict in favor of the officers because the city remained as a defendant).

No purpose would be served by allowing this case to proceed further with unnecessarily and redundantly named Defendants remaining in the case and with the Defendants having to be in doubt as to their need to defend and as to their available defenses.  Some of the Defendants—who, under at least a plausible reading of the Amended Complaint, have been sued only in their official capacities—have already filed Answers—perhaps unnecessarily—and there is no need for them to file summary judgment

motions asserting a qualified immunity defense or even to defend this case at all if they are not even being sued in their individual capacities. If they are named only in their official capacities, it is the City—not the individuals—who should be appearing and making filings. Accordingly, Plaintiffs will be ordered to show cause as to why a substitution of parties should not be made, and the summary judgment deadline will be extended to allow a proper framing of the issues.

### IV. Conclusion

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. The Motion to Dismiss Amended Complaint and Motion to Strike Official Capacity Claims Against the Defendant Officers (Doc. 50) filed by Defendant Michael Chitwood is **GRANTED in part** and **DENIED in part**. The motion is **granted** insofar as it pertains to Count VIII of the Amended Complaint and is otherwise **denied**. Count VIII is hereby **DISMISSED with prejudice**.

2. **On or before Monday, October 31, 2011**, Plaintiffs shall **SHOW CAUSE** in a filing of three (3) pages or fewer: (1) why the City of Daytona Beach should not be substituted as a Defendant in the place of the official-capacity Defendants; (2) why named Defendants Michael Chitwood, James Chirco, and Michael Oteri should not be dismissed as named Defendants in this case; and (3) why the punitive damages demand in Count VII should not be stricken.

3. The dispositive motion deadline is hereby **extended** from November 1, 2011 to December 1, 2011. This case remains set for trial during the April 2012 trial term, and all other deadlines in the Case Management and Scheduling Order (Doc. 30) remain in full force

and effect.

**DONE** and **ORDERED** in Orlando, Florida this 21st day of October, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record